# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### ORLANDO DIVISION

DEIDRA A. YAMIN,

        **Plaintiff,**

-vs-                                                     **Case No. 6:07-cv-1574-Orl-GJK**

COMMISSIONER OF SOCIAL
SECURITY,

        **Defendant.**

_____

## MEMORANDUM OF DECISION

Plaintiff Deidra A. Yamin ("Yamin") appeals to the district court from a final decision of the Commissioner of Social Security (the "Commissioner") denying her application for disability insurance benefits and Supplemental Security Income ("SSI"). *See* Doc. No. 1. For the reasons set forth below, it is ordered that the Commissioner's decision is **REVERSED AND REMANDED under sentence four of 42 U.S.C. § 405(g)**.

## I.    <u>BACKGROUND</u>

Yamin was born on October 17, 1970, and alleges an onset of disability as of September 16, 2004. R. 76.[1]  On December 20, 2004, Yamin filed an application for disability benefits and SSI. R. 69.  Yamin is insured for disability benefits through June 30, 2005. R. 19, 265.  At the time of the August 21, 2006, hearing before the Administrative Law Judge (the "ALJ"), Yamin was thirty-six years old.  R. 262-290.  Yamin has a high school education and has previous

---

[1] In her application, Yamin alleged an onset date of January 2, 2002, but later amended it to September 16, 2004.  R. 69, 76.

employment experience as a real estate agent, office manager, a secretary, and most recently as a fitness trainer.  R. 267, 271.  She has not been engaged in any substantial gainful activity since September 16, 2004.  R. 267, 271.

Yamin has a history of bipolar affective disorder and alcohol abuse, including two arrests for driving under the influence.  R. 233-43, 275.  Yamin has a history of being institutionalized on numerous occasions for bipolar affective disorder, suicide attempts, alcohol and substance abuse, including two Baker Act admissions into acute care facilities in 2004.  R. 233-37.[2] Yamin sought disability benefits and SSI due bipolar disorder and schizo-affective disorder.  R. 267.

The objective medical record primarily consists of illegible handwritten treatment notes from Yamin's treating psychiatrist, Dr. Ali A. Kashfi, and in-patient admission, treatment plans, and discharge reports from La Amistad Behavioral Health Services ("La Amistad") where Yamin was admitted for one month in 2003 and two months in 2004.  R. 209-25, 228-32, 233-43, 244-60.

**La Amistad 6/4/2003 – 6/25/2003**

On June 4, 2003, Yamin was admitted to La Amistad, complaining of being "'out of control'" and becoming "'manic into rage and then I drink to intoxication.'"  R. 241.[3]  La Amistad's preadmission assessment and psychiatric evaluation states the following:

---

[2] Notably, in the ALJ's March 9, 2007, decision finding no disability, he specifically states: "She has never been backer acted . . . She has never been suicidal."  R. 21. The medical record, not including various disability related forms or evaluations, in this case consists of the following: handwritten treatment notes of one treating psychiatrist (R. 209-25, 228-32, 244-60); and two typed intake, treatment plans, and discharge reports from an in-patient treatment facility (R. 233-43).  Yamin's Baker Acts, other institutionalizations, and suicide attempts are clearly detailed throughout the records from the in-patient treatment facility. R. 233-44.  Therefore, given the relatively sparse medical record, the Court is perplexed as to how the ALJ could have concluded that Yamin had never been Baker Acted and never been suicidal.
[3] It is unknown whether Yamin's admission into La Amistad was voluntary.

This is the first La Amistad admission and third psychiatric inpatient treatment, actually this is continuation of the second admission to the Center for Drug Free Living and was previously at Fairwinds, 28 days for Bipolar Affective Disorder and alcohol addiction.

. . .

She was arrested, was taken to jail for DUI, this was her only arrest[4] and she stated that she did not know why she had to drink two bottles of wine, was in height of her manic, in spite of being (sic) taking her medications, Lamictal which she reports has been very effective on Lamictal and Effexor XR.

. . .

She has had severe insomnia in spite of taking Thorazine and Seroquel, states when she gets into the height of her manic, nothing works, becomes belligerent, obsessed with getting behind the wheel.  She also has high level of energy, over-talkativeness and pressured speech.  She also has been moody, irritable and argumentative with her husband who called the police and she was Marchman Acted after she was arrested, was in the Center for Drug Free Living for two weeks and just discharged to be admitted to La Amistad.

. . .

**PAST MEDICAL AND PSYCHIATRIC HISTORY**: [Yamin] has been known as Bipolar Affective Disorder since age twenty-four.  She has been mainly treated by several different psychiatrists[5] as outpatient.  She reports she has been on forty-two different medications, most of them didn't work.  These include Trileptal, lithium, Depakote, and also she gets worse on a number of SSRI's such as Prozac, Zoloft, Paxil and also Lexapro and Celexa.

. . .

She feels she has been on the best medicine since she was admitted to Fairwinds for four weeks under the care of Dr. Elyousef on Lamictal . . . and also Effexor XR.  She's also on a number of medications, has had insomnia, and has been on Ambien as well other hypnotic medicine that has not worked.

. . .

Her only arrest had been recently due DUI.  She has a history of alcohol addiction since age nineteen, gradually started drinking steadily and excessively.  She has been under treatment for the past three years for alcohol addiction, has one two years of sobriety.

---

[4] Yamin was arrested again for DUI in 2004.  R. 233.
[5] As noted above, other than Dr. Kashfi, there are no treatment records in the record from any other psychiatrist.  See supra p. 2.

> She was on Antabuse until she admitted herself to Fairwinds. This was due to the fact that when she was on Antabuse, she had half a glass of wine and she passed out, made her sick, decided to admit herself to Fairwinds, she was in the height of her manic as well.
>
> . . .
>
> **MENTAL STATUS EXAMINATION**: [Yamin] is a 32-year-old who looks physically as her stated age, in good shape body-wise trim. She was talkative and communicative, but she exhibited unusual change of affect, drastically changing from low to high, was pressured speech, over-talkativeness. She reports that she mostly gets manic and she gets dangerous when she gets in the manic phase for she become unpredictable. She denies being physically aggressive except she threw pillow at her husband, states that her husband is very supportive. She also reports severe insomnia, both in the form of delay in falling asleep and waking up several times. She has high level of energy, goes tiredless (sic) and the body trainer, it fits her manic state. Her thought content was primarily preoccupation with feelings of hopelessness, helplessness and despair. She denies any suicidal thought. She also stated that insomnia was her major problem. . . . She's orientated to time, place and person and her memory is intact. Insight and judgment are fair.

R. 241-42. Yamin's provisional diagnosis was Bipolar Affective Disorder, Panic Anxiety Disorder, and Alcohol Dependence. R. 242. At the time Yamin was admitted to La Amistad, her global assessment of functioning ("GAF") score was 41. R. 242.[6] Yamin's admission report was signed by Dr. Kashfi. R. 243.

On June 25, 2003, Yamin was discharged from La Amistad by Dr. Kashfi. R. 238-40. The discharge notes reveal that Yamin was treated with the following medication: Effexor XR, Revia, Lamictal, Calan SR, Trazodone, Ativan at the time of admission, Xanax XR, BuSpar,

---

[6] A GAF score between 31 and 40 indicates a severe impairment in realty testing or communication or major impairment in several areas, such as work or school, family relations, judgment, thinking or mood. DSM-IV-TR, 4th ed. (New York: American Psychiatric Association 2000) 32, 34. A GAF score of 70 is generally recognized as an individual who is functioning well. Scores of 50 or below indicate that the individual has a severe impairment both psychologically and occupationally. *See* 5 Social Security Practice Guide § 40.02[2] (Matthew Bender & Co. 2000). In the ALJ's decision, he did not address or mention any of Yamin's GAF scores. In *McCloud v. Barnhart*, 166 Fed.Appx. 410, 418 (11th Cir. 2006), the Eleventh Circuit remanded the Commissioner's decision back to the ALJ, in part, because the ALJ did not consider or ascribe any particular weight to a claimants GAF score of 45. *Id.*

Lithobid, Clonidine, and Tylenol. R. 239. Yamin was monitored every fifteen minutes. R. 239. The treatment focused on Yamin's mood disorder and substance abuse. R. 239. She attended various group and individual therapy sessions, milieu management, medication management, and CD education. R. 239. Yamin's final diagnosis upon discharge remained the same. R. 238. The following recommendations were made following discharge: Yamin was scheduled for follow-up treatment with Dr. Mian at Florida Psychiatric Associates, she was told to attend 90 AA meetings in the next 90 days, and she was provided numerous medications. R. 239-40.

**La Amistad 7/19/2004 – 9/2/2004**

On July 19, 2004, Yamin was again admitted to La Amistad, stating that her "'life is a mess,'" she "'has been crying day and night,'" and she is a failure and a danger to herself. R. 235. La Amistad's preadmission assessment and psychiatric evaluation states the following in pertinent part:

> This is the second La Amistad admission and one of the numerous psychiatric admissions to the acute care hospital as well as recently she was discharged from Center for Drug Free Living for the second time. Since last year when discharged . . . she has had two admissions, Baker Act, to the acute care Florida Hospital for suicide attempt and overdose. Also she has had surgery three months ago, cosmetic surgery and liposuction. She has been followed as outpatient only on irregular basis by Dr. Thaibeau.
> . . .
> Her parents state that she was arrested recently for DUI and this was her second arrest and she was also under the influence of . . . Hydrocodone, the medication that was given to her three months ago for surgery and she had been abusing it and overdosed twice, once with suicidal intent and was hospitalized.
> . . .
> She . . . states that she has been in acute state of manic since she stopped taking Lamictal, that she states was working and stabilized. She reports that her cosmetic surgeon advised her to stop Lamictal in preparation for surgery and that was the worst mistake. She, however, admits that she has not been totally

compliant with all the medications.

. . .

**PAST MEDICAL AND PSYCHIATRIC HISTORY**: [Yamin] was admitted to La Amistad and had prior admission to Fairwinds Hospital as well as Center For Drug Free Living, had three admissions prior to La Amistad for Bipolar Affective Disorder and Alcohol Addiction. In Fairwinds, they had diagnosed her as Schizoaffective Disorder and Borderline Personality Disorder. She has been diagnosed as Bipolar Disorder since age twenty-four with several failure[s] of treatment. The last time, when she was discharged from La Amistad, she seemed stable on Lithobid . . . Effexor XR . . . Clonidine . . . Lamictal . . . Revia . . . and Calan SR for panic disorder.

. . .

She states that she went to Dr. Taibeau and her medication changed, but stayed with Lamictal until three months ago and that was the main medicine. She stated that when she was admitted recently to Center For Drug Free Living, they could not afford Lamictal and put her on Neurontin. She has had a relapse of alcohol addiction since Christmas and her husband had Marchman Acted her again recently. She began abusing Hydrocodone after the surgery, has had several episodes of intoxication with alcohol to the point that she claims that she doesn't remember what she does and she gets quite distractive, took the door off the refrigerator for her husband refusing to buy wine for her.

. . .

She has two children, has been married for twelve years. She has recently been served with divorce papers while she was at the Center For Drug Free Living and that has had a major impact on her.

. . .

Her prevailing affect is quite labile and irritable, she has pressured speech and over-talkativeness, flies off the handle frequently. She gets extremely angry when she is interrupted. Her stream of thought is quite expansive. Her prevailing thought content is preoccupation with feelings of despair and helplessness as well as pervasive hostility directed at her husband. No delusional hallucinations and she denies suicidal thought. Denies getting violent.

. . .

Thought processes were evidence of thought racing. . . . Memory for recent, intermediate and remote event is intact. She is oriented to time, place, and person. Insight and judgment are marginal.

6

R. 235-36.   Yamin's provisional diagnosis was the following: Bipolar Affective Disorder, Cyclothymic Disorder, Alcohol Addictions, Opiate Abuse, Histrionic Borderline Personality Traits, and Panic Disorder.   R. 236-37.   The admission report indicates that Yamin seemed stable for the five months following her initial La Amistad admission, but after she returned to alcohol and stopped taking Lamictal, her condition severely regressed.   R. 237.   Yamin's admission report is signed by Dr. Kashfi.   Upon admission, Yamin's GAF score was 35.   R. 237.   The discharge notes reflect that upon admission, Yamin was "in obvious need of further stabilization."   R. 233.

On September 2, 2004, Yamin was discharged from La Amistad. R. 233-34.   The discharge notes[7] reflect the following in pertinent part:

> She showed significant improvements and finally agreed to step-down to the partial hospitalization program for two weeks of further treatment.   She was facing a court appearance and feared the loss of custody of her children because of her history of alcohol addiction.   She was volatile with a labile affect and her severe mood disorder persisted.   She had impaired relationships with her peers because of her emotional outbursts.   However, she attends the partial program on a regular basis and continued to stabilize. Her severe irritability, affective instability and mood disorder steadily improved.   In chemical dependency groups, she continued to appear committed to recovery.   She identified anger, anxiety and depression as emotions that she was previously self-medicating. She felt that she was making progress learning how to cope with those emotions without the use of drugs.   She reported no substance abuse use cravings or involvement in dangerous situations.   Overall, she was making good progress toward her treatment goals.   She understood that sobriety was a major factor in the future of her children's lives and she continued to verbalize her

---

[7] It is apparent that the discharge notes contained in the record on appeal are not complete.  R. 233-34.  The first page ends with the following partial sentence: "She was in obvious need of further stabilization, . . ."  R. 233. However, the next page, which is labeled as page "3", begins ". . . medications which she was tolerating with difficulties."  R. 234.  The very next sentence begins by concluding that Yamin's response to the treatment showed significant improvement without any discussion of what treatment was provided.  R. 234.  Thus, the Court concludes that the second page of the discharge notes is missing from the record.

> commitment to sobriety.  It was felt that she was stable for transfer
> to outpatient follow-up and she was prepared for discharge.  At the
> time of discharge, the patient denied suicidal or homicidal ideation.

R. 234.  Upon discharge, Yamin was scheduled for outpatient treatment with Dr. Kashfi and

prescribed the following medications: Lamictal, Lithobid, Revia, Seroquel, and Effexor XR.  R.

234.

**Dr. Kashfi**

The treatment notes from Dr. Kashfi reflect that Yamin received approximately 33

treatments or therapy sessions with Dr. Kashfi from September 16, 2004 through June 26, 2006.

R. 209-25, 228-32, 244-54.  The handwritten notes are difficult to read and portions of the notes

are incomprehensible. *Id.*[8]

On February 3, 2005, Dr. Kashfi submitted a Treating Source Mental Health Report, in

support of Yamin's claims.  R. 226-27.  The report contained in the record is largely

incomprehensible.  *Id.*  The typed questions, as well as Dr. Kashfi's handwritten responses, are

largely illegible.  *Id.*[9]

On June 7, 2005, Dr. Kashfi submitted a letter in support of Yamin's claim.  R. 255.  The

letter states the following in pertinent part:

> [Yamin] has been under my continuous psychiatric care since
> being admitted to La Amistad . . . last year.  She entered the
> center's Partial Outpatient Program and is presently being treated
> by me for outpatient medication management.  Ms. Yamin's
> diagnosis is Bipolar Affective Disorder, Attention Deficit

---

[8] The incomprehensibility of Dr. Kashfi's treatment notes is significant to the outcome of this case. In the ALJ's decision, he affords little or no weight to Dr. Kashfi's ultimate opinions regarding Yamin's limitations because the ALJ determined that Dr. Kashfi's treatment notes do "not support such limitation[s]."  R. 21.  As will be explained in further detail below, that finding is unsupportable given the illegibility of the treatment notes.

[9] Throughout the ALJ's decision he refers to the February 3, 2005, medical source statement from Dr. Kashfi.  R. 20-21.  However, the actual report the ALJ is referring to is a January 24, 2006, Mental Impairment Questionnaire submitted by Dr. Kashfi.  R. 203-08.

Hyperactivity Disorder and she is in recovery from Alcohol Addiction. At the present time, Ms. Yamin is unable to drive or work due to the aforementioned psychiatric conditions.

R. 255.[10]

On January 24, 2006, Dr. Kashfi submitted a Mental Impairment Questionnaire (the "Questionnaire"). R. 203-07. In the Questionnaire, Dr. Kashfi noted that Yamin had a current GAF score of 49. R. 203. Dr. Kashfi stated that Yamin has responded favorably to this treatment and remains stable. R. 203. Yamin's current medications were Lamictal, Seroquel, Tolamax, Lexapro, and Adderall XR, and Dr. Kashfi reported that the medication's side effects do not interfere with driving or working. R. 203. Dr. Kashfi stated that Yamin was still exhibiting residual lability of affect, marked irritability, and marked talkativeness, pressured speech, but her overall bipolar illness is reasonably under control. R. 203. Dr. Kashfi further stated that Yamin's prognosis was favorable with continuous treatment. R. 203. According to Dr. Kashfi, Yamin's symptoms are: mood disturbance, psychomotor agitation or retardation, bipolar syndrome with a history of episodic periods manifested by the full symptomatic picture of both manic and depressive syndromes, hyperactivity, motor tension, emotional lability, flight of ideas, manic syndrome, inflated self-esteem, pressures of speech, easy distractibility, autonomic hyperactivity, sleep disturbance, oddities of thought, perception, speech, or behavior, and decreased need for sleep. R. 204.

The Questionnaire asked Dr. Kashfi to provide an opinion of how Yamin's mental capabilities are affected by her impairments. R. 204. In the category Mental Abilities and Aptitudes Needed to Do Unskilled Work, Dr. Kashfi opined that Yamin had an unlimited or very

---

[10] The ALJ's decision does not reference the letter or Dr. Kashfi's opinion that Yamin was unable to work due to her mental impairments. R. 18-24.

good ability to ask simple questions or request assistance.  R. 205.  Dr. Kashfi opined that Yamin had a limited but satisfactory ability to: understand and remember very short instructions and simple questions; and be aware of normal hazards and take appropriate precautions.  R. 205.  Dr. Kashfi opined that Yamin had a seriously limited, but not precluded ability to: remember work-like procedures; work in coordination with or proximity to others without being unduly distracted; make simple work related decisions; accept instructions and respond appropriately to criticism from supervisor.  R. 205.[11]  Dr. Kashfi opined that Yamin was unable to meet competitive standards in the following areas: remember work-like procedures;[12] carry out very short and simple instructions, maintain attention for two hour segment; maintain regular attendance and be punctual within customary, usually strict tolerances; sustain an ordinary routine without special supervision; complete a normal workday and workweek without interruptions from psychologically based symptoms; perform at a consistent pace without an unreasonable number and length of rest periods; get along with co-workers or peers without unduly distracting them or exhibiting behavioral extremes; respond appropriately to changes in routine work setting; and deal with normal work stress.  R. 205.[13]

In the category Mental Abilities and Aptitudes Needed to Do Semiskilled and Skilled Work, Dr. Kashfi opined that Yamin was seriously limited, but not precluded from understanding and remembering detailed instructions.  R. 206.  Dr. Kashfi opined that Yamin was unable to meet competitive standards in the following areas: carry out detailed instructions;

---

[11] The Questionnaire defines "seriously limited, but not precluded" to mean: "ability to function in this area is seriously limited and less than satisfactory, but not precluded.  This is a substantial loss of ability to perform work related activity."  R. 204.

[12] Dr. Kashfi also checked the box for seriously limited but not precluded for this particular ability.  R. 205.

[13] The Questionnaire defines "unable to meet competitive standards" to mean: "your patient cannot satisfactorily perform this activity independently, appropriately, effectively and on a sustained basis in a regular work setting."  R. 205.

set realistic goals or make plans independently of others; deal with stress of semi-skilled and skilled work.  R. 206.  In the category Mental Abilities and Aptitudes Needed to Do Particular Types of Jobs, Dr. Kashfi opined that Yamin had the limited but satisfactory ability to adhere to basic standards of neatness and cleanliness and to use public transportation.  R. 206.  Dr. Kashfi opined that Yamin was unable to meet competitive standards in the following: interacting appropriately with the general public; maintaining socially appropriate behavior; and traveling in unfamiliar places.  R. 206.  Of all the categories, Dr. Kashfi opined that Yamin's psychological impairments would cause the greatest limitation in the following areas: sustaining an ordinary routine without supervision; dealing with the stress of semi-skilled or skilled work; and completing a normal workday.  R. 206.

Dr. Kashfi was also asked to opine on Yamin's functional limitations.  R. 207.  Dr. Kashfi stated that Yamin has marked limitations in maintaining social functioning and in concentration, persistence, and/or pace.  R. 207.  Dr. Kashfi stated that Yamin has moderate limitations in the restriction of activities of daily living.  R. 207.  Dr. Kashfi also noted that Yamin had one or two repeated episodes of decompensation within a 12 month period, which last at least two weeks in duration.  R. 207.  Dr. Kashfi asserted that Yamin's impairments would cause her to be absent from work more than four days per month.  R. 207.

### **Mental RFC and Psychiatric Review Technique**

Two non-examining state agency consultants, Drs. Leigh S. Rosenberg and Pamela D. Green provided Mental Residual Functional Capacity Assessments ("RFC") and Psychiatric Review Techniques on May 18, 2005 and June 6, 2006, respectively.  R. 167-202.  Dr. Rosenberg opined that Yamin's impairments moderately limited her abilities for restriction of

activities of daily living and social functioning.  R. 181.  Dr. Rosenberg opined that Yamin had

mild difficulties in maintaining concentration, persistence, and/or pace.  R. 181.  Notably, Dr.

Rosenberg stated that Yamin had no episodes of decompensation for an extended duration.  R.

181.  Dr. Green opined that Yamin's impairments moderately limited her ability to maintain

social functioning and her ability to concentrate, persist, and/or pace.  R. 195.  Dr. Green opined

that Yamin had mild restrictions of activities of daily living.  Dr. Green also stated that Yamin

had no episodes of decompensation for an extended duration.  R. 195.[14]

### Administrative History

On May 23, 2005, Yamin's claims for disability benefits and SSI were denied. R. 36-41.

On July 15, 2005, Yamin requested reconsideration and her claims were later denied again upon

reconsideration.  R. 42-47.  Yamin requested a hearing and, on August 21, 2006, a hearing was

held before the ALJ, the Honorable Douglas Walker.  R. 48, 262-90. Yamin was represented at

the hearing by Evelyn Pabon, Esq.  R. 262.  Yamin and Vocational Expert (the "VE"), Randolph

Salmons, testified at the hearing.  R. 262-89.  As set forth below, a detailed review of the

testimony is not necessary for a determination of this appeal.

On March 9, 2007, the ALJ issued a decision denying Yamin's application for disability

and SSI finding the following:

1. Yamin met the disability-insured status requirements of the Social Security Act on her alleged disability onset date . . . and . . . through June 30, 2005;

2. Yamin has not engaged in substantial gainful activity since the amended onset date of disability;

3. Yamin has "severe" affective mood disorder and personality disorder.  She has a history

---

[14] In the ALJ's decision, neither of the non-examining state agency consultants' opinions are addressed or mentioned.  R. 18-24.  However, it is apparent that the ALJ must have utilized them in forming his RFC determination because there are no other reports, evaluations, or assessments in the record.

of substance abuse disorder (alcohol abuse);

4. Yamin's medical impairments do not medically meet or equal any of the listed impairments;

5. I find that Yamin's allegations regarding her limitations have a situational foundation, but are exaggerated. Thus . . . her allegations are not totally credible;

6. I find that Yamin retains a residual functional capacity . . . to perform unskilled work with . . . limitations;

7. Yamin's past relevant work required the performance of work-related activities precluded by her residual functional capacity. Yamin's severe impairments do not, however, prevent her from performing unskilled bench or assembly work, and housekeeper work, which exist in significant numbers in the national and state economies; and

8. Yamin was not under a disability.

R. 23. In determining that Yamin had the RFC to perform unskilled work, the ALJ specifically considered the treatment notes, the Questionnaire, and records from La Amistad. R. 20-22. The ALJ provided a detailed review of Dr. Kashfi's opinions contained in the Questionnaire. R. 20-21. Specially, the ALJ noted the following:

> The treating physician . . . found that even though she had a moderate restrictions activities of daily living, she was markedly limited in her abilities to maintain social functioning, and that she had marked [d]efficiency of concentration and persistence of pace. He also found that she had one or two episodes of decompensation, each of at least twelve week duration.

R. 21. Immediately thereafter, the ALJ made the following finding:

> In reviewing [Dr. Kashfi's] treatment notes, they did not support such limitation. In fact, through successful intervention of her medication, [Dr. Kashfi's] progress notes reflect that her problems did not change, her mental status did not change, she did not have suicidal or homicidal thinking, her diagnosis has not changed and because of her stability her medication was not further changed.

R. 21 (emphasis added).

The ALJ then offers the following opinion:

> In fact, her conservative medication treatment reflects a situational crisis in the claimant's life in that she unfortunately went through a marriage dissolution. However, she maintains her situation by seeing her treating source twice per month and this is successfully maintained on her psychotropic medications that even though her divorce was finalized at the end of 2004, the no doubt stressful situation did not prevent her from persevering going to Alcoholics Anonymous.

R. 21. The ALJ then discusses Yamin's testimony and makes the following RFC determination:

> The evidence shows that the claimant has a mild restriction of activities of daily living. She has moderate difficulties maintaining social functioning and moderate difficulties in maintaining concentration, persistence or pace, although no episodes of decompensation of extended duration. Her treatment notes reflect that she is stable and doing well. In fact, with her medications, she was able to improve her life. She moved. She does some cooking. Even though she is forgetful at times, she does some household chores. She needs some occasional reminders. She shops. She has some legal stressors as discussed. She is able to follow instructions. And apparently alcohol relate, she has a history of difficulty with authority. As a result, I have considered the reductions in her [RFC limitations].
>
> . . .
>
> However, the evidence supports that she is able to work in low stress jobs. She is able to perform simple job instructions, even involving three instructions. Even considering her bipolar propensities, including her need to avoid hazards in the work place, she remains able to carry out simple work. She is not significantly limited in her ability to remember locations and work like procedures and very short and simple instructions. She is able to carry out very short and simple instructions. She is not significantly limited in her ability to perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances. She is able to work in proximity in and coordination with others without being distracted by them. She is able to make simple work-related decisions. She is able to ask simple questions and request assistance. She is able to get along with her co-workers or peers without being distracted by them or exhibiting behavioral extremes and she can maintain socially appropriate behavior to adhere to basic standards of neatness and

14

cleanliness. She is <u>able to travel in unfamiliar places</u> and use
public transportation and she is <u>able to set realistic goals and make
plans independent of others</u>. Considering her need to avoid more
than low stress, in conjunction with her ability to understand,
remember, and carry out one, and two and three step job
instructions, and avoid hazards in the work place, with her ability
to otherwise carry out simple work, the vocational expert
considered that she is not able to perform her past relevant work.

R. 22 (emphasis added). Nowhere in the ALJ's decision did he address, weigh, or even mention

Yamin's GAF scores of 35, 41, and 49.

Yamin requested a review of the ALJ's decision from the Appeals Council, and on

August 4, 2007, the Appeals Council denied review. R. 3-5, 8. On October 3, 2007, Yamin

timely appealed the Appeals Council's decision to the United States District Court. Doc. No. 1.

On March 10, 2008, Yamin filed a memorandum of law in support of her appeal. Doc. No. 16.

On May 6, 2008, the Commissioner filed a memorandum in support of his decision that Yamin is

not disabled. Doc. No. 17. The appeal is ripe of determination.

## II.    THE PARTIES' POSITIONS

Yamin assigns three errors to the Commissioner's decision: (1) the Commissioner erred

in determining that Yamin had the mental RFC to perform unskilled work requiring up to three

steps because the only treating and examining physician concluded that Yamin was seriously

limited or unable to meet competitive standards in her mental ability to perform most work

related activities and, therefore, the ALJ simply made his own conclusions without substantial

evidentiary support; (2) the ALJ erred because the he failed to determine whether all of Yamin's

diagnoses were severe impairments; and (3) the ALJ erred in finding Yamin's allegations

regarding her limitations were not totally credible. Doc. No. 16.

The Commissioner argues that substantial evidence supports his decision to deny Yamin's claims. He maintains that: (1) while the ALJ did not totally discount Dr. Kashfi's opinion, the evidence, including Dr. Kashfi's own treatment notes, provided good cause for not affording significant weight to all of his opinions;[15] (2) the ALJ found Yamin's affective mood disorder and personality disorder to be severe impairments, satisfying step two of the sequential analysis, and, therefore, the ALJ was not required "to provide an exhaustive list of possible severe impairments at step two"; and (3) the ALJ articulated specific reasons, supported by substantial evidence, for finding Yamin's allegations not totally credible. Doc. No. 17.

III.  **LEGAL STANDARDS**

   A.  **THE ALJ'S FIVE-STEP DISABILITY ANALYSIS**

Under the authority of the Social Security Act, the Social Security Administration has established a five-step sequential evaluation process for determining whether an individual is disabled. *See* 20 CFR §§ 404.1520(a), 416.920(a). The steps are followed in order. If it is determined that the claimant is or is not disabled at a step of the evaluation process, the evaluation will not go on to the next step.

At step one, the ALJ must determine whether the claimant is engaging in substantial gainful activity. 20 CFR §§ 404.1520(b), 416.920(b). Substantial gainful activity ("SGA") is defined as work activity that is both substantial and gainful. "Substantial work activity" is work activity that involves performing significant physical or mental activities. 20 CFR §§ 404.1572(a), 416.972(a). "Gainful work activity" is work that is usually performed for pay or profit, whether or not a profit is realized. 20 CFR §§ 404.1572(b), 416.972(b). Generally, if an

---

[15] In this section of the Commissioner's brief, he also argues that the case should not be remanded due to the ALJ's failure to address or weigh "a single GAF score" because Yamin failed to show how a single GAF score of 49 translates into specific limitations on her ability to perform basic work functions. Doc. No. 16-17 (emphasis added).

individual has earnings from employment or self-employment above a specific level set out in the regulations, it is presumed that he has demonstrated the ability to engage in SGA. 20 CFR §§ 404.1574, 404.1575, 416.974, 416.975.  If an individual is not engaging in SGA, the analysis proceeds to the second step.

At step two, the ALJ must determine whether the claimant has a medically determinable impairment that is "severe" or a combination of impairments that is "severe." 20 CFR §§ 404.1520(c), 416.920(c).  An impairment or combination of impairments is "severe" within the meaning of the regulations if it significantly limits an individual's ability to perform basic work activities.  An impairment or combination of impairments is "not severe" when medical or other evidence establish only a slight abnormality or a combination of slight abnormalities that would have no more than a minimal effect on an individual's ability to work. 20 CFR §§ 404.1521, 416.921.

In determining whether a claimant's physical and mental impairments are sufficiently severe, the ALJ must consider the combined effect of all of the claimant's impairments, and must consider any medically severe combination of impairments throughout the disability determination process.  42 U.S.C. § 423(d)(2)(B).  The ALJ must evaluate a disability claimant as a whole person, and not in the abstract as having several hypothetical and isolated illnesses. *Davis v. Shalala*, 985 F.2d 528, 534 (11th Cir. 1993).  Accordingly, the ALJ must make it clear to the reviewing court that the ALJ has considered all alleged impairments, both individually and in combination, and must make specific and well-articulated findings as to the effect of a combination of impairments when determining whether an individual is disabled.  *See Jamison v. Bowen*, 814 F.2d 585, 588-89 (11th Cir. 1987); *Davis*, 985 F.2d at 534.  A remand is required

where the record contains a diagnosis of a severe condition that the ALJ failed to consider properly. *Vega v. Comm'r*, 265 F.3d 1214, 1219 (11th Cir. 2001). If the claimant does not have a severe medically determinable impairment or combination of impairments, he is not disabled. If the claimant has a severe impairment or combination of impairments, the analysis proceeds to the third step.

At step three, it must be determined whether the claimant's impairment or combination of impairments meets or medically equals the criteria of an impairment listed in 20 CFR Part 404, Subpart P, Appendix 1 (the "Listing(s)"). 20 CFR §§ 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925, 416.926. If the claimant's impairment or combination of impairments meets or medically equals the criteria of a Listing and meets the duration requirement (20 CFR §§ 404.1509, 416.909), the claimant is disabled. If it does not, the analysis proceeds to the next step.

Before considering step four of the sequential evaluation process, the ALJ must first determine the claimant's RFC. 20 CFR §§ 404.1520(e), 416.920(e). An individual's RFC is his ability to do physical and mental work activities on a sustained basis despite limitations secondary to his established impairments. In making this finding, the ALJ must also consider all of the claimant's impairments, including those that may not be severe. 20 CFR §§ 404.1520(e), 404.1545, 416.920(e), 416.945.

Next, the ALJ must determine step four, whether the claimant has the RFC to perform the requirements of his past relevant work. 20 CFR §§ 404.1520(f), 416.920(f); *Crayton v. Callahan*, 120 F.3d 1217, 1219 (11th Cir. 1997). The ALJ makes this determination by considering the claimant's ability to lift weight, sit, stand, push, and pull. *See* 20 C.F.R. § 404.1545(b). The

claimant has the burden of proving the existence of a disability as defined by the Social Security Act. *Carnes v. Sullivan*, 936 F.2d 1215, 1218 (11th Cir. 1991). If the claimant is unable to establish an impairment that meets the Listings, the claimant must prove an inability to perform the claimant's past relevant work. *Jones v. Apfel*, 190 F.3d 1224, 1228 (11th Cir. 1999). The term past relevant work means work performed (either as the claimant actually performed it or as it is generally performed in the national economy) within the last 15 years or 15 years prior to the date that disability must be established. In addition, the work must have lasted long enough for the claimant to learn to do the job and have been SGA. 20 CFR §§ 404.1560(b), 404.1565, 416.960(b), 416.965. If the claimant has the RFC to do his past relevant work, the claimant is not disabled. If the claimant is unable to do any past relevant work, the analysis proceeds to the fifth and final step.

At the last step of the sequential evaluation process (20 CFR §§ 404.1520(g), 416.920(g)), the ALJ must determine whether the claimant is able to do any other work considering his RFC, age, education and work experience. In determining the physical exertional requirements of work available in the national economy, jobs are classified as sedentary, light, medium, heavy, and very heavy. 20 C.F.R. § 404.1567. If the claimant is able to do other work, he is not disabled. If the claimant is not able to do other work and his impairment meets the duration requirement, he is disabled. Although the claimant generally continues to have the burden of proving disability at this step, a limited burden of going forward with the evidence shifts to the Social Security Administration. In order to support a finding that an individual is not disabled at this step, the Social Security Administration is responsible for providing evidence that demonstrates that other work exists in significant numbers in the

national economy that the claimant can do, given the RFC, age, education and work experience. 20 CFR §§ 404.1512(g), 404.1560(c), 416.912(g), 416.960(c).

## B. THE STANDARD OF REVIEW

The Commissioner's findings of fact are conclusive if supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is more than a scintilla — i.e., the evidence must do more than merely create a suspicion of the existence of a fact, and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion. *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995) (*citing Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982) and *Richardson v. Perales*, 402 U.S. 389, 401 (1971)); *accord*, *Edwards v. Sullivan*, 937 F.2d 580, 584 n.3 (11th Cir. 1991).

Where the Commissioner's decision is supported by substantial evidence, the district court will affirm, even if the reviewer would have reached a contrary result as finder of fact, and even if the reviewer finds that the evidence preponderates against the Commissioner's decision. *Edwards v. Sullivan*, 937 F.2d 580, 584 n.3 (11th Cir. 1991); *Barnes v. Sullivan*, 932 F.2d 1356, 1358 (11th Cir. 1991). The district court must view the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision. *Foote*, 67 F.3d at 1560; *accord*, *Lowery v. Sullivan*, 979 F.2d 835, 837 (11th Cir. 1992) (court must scrutinize the entire record to determine reasonableness of factual findings); *Parker v. Bowen*, 793 F.2d 1177 (11th Cir. 1986) (court also must consider evidence detracting from evidence on which Commissioner relied).

Congress has empowered the district court to reverse the decision of the Commissioner without remanding the cause. 42 U.S.C. § 405(g)(Sentence Four). The district court will reverse a Commissioner's decision on plenary review if the decision applies incorrect law, or if the

decision fails to provide the district court with sufficient reasoning to determine that the Commissioner properly applied the law. *Keeton v. Dep't of Health & Human Serv.*, 21 F.3d 1064, 1066 (11th Cir. 1994); *accord*, *Cornelius v. Sullivan*, 936 F.2d 1143, 1145 (11th Cir. 1991); *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990). This Court may reverse the decision of the Commissioner and order an award of disability benefits where the Commissioner has already considered the essential evidence and it is clear that the cumulative effect of the evidence establishes disability without any doubt. *Davis v. Shalala*, 985 F.2d 528, 534 (11th Cir. 1993); *accord*, *Bowen v. Heckler*, 748 F.2d 629, 631, 636-37 (11th Cir. 1984). A claimant may be entitled to an immediate award of benefits where the claimant has suffered an injustice, *Walden v. Schweiker*, 672 F.2d 835, 840 (11th Cir. 1982), or where the ALJ has erred and the record lacks substantial evidence supporting the conclusion of no disability, *Spencer v. Heckler*, 765 F.2d 1090, 1094 (11th Cir. 1985).

The district court may remand a case to the Commissioner for a rehearing under sentences four or six of 42 U.S.C. § 405(g); or under both sentences. *Jackson v. Chater*, 99 F.3d 1086, 1089-92, 1095, 1098 (11th Cir. 1996). To remand under sentence four, the district court must either find that the Commissioner's decision is not supported by substantial evidence, or that the Commissioner incorrectly applied the law relevant to the disability claim. *Jackson*, 99 F.3d at 1090 - 91 (remand appropriate where ALJ failed to develop a full and fair record of claimant's RFC); *accord*, *Brenem v. Harris*, 621 F.2d 688, 690 (5th Cir. 1980) (remand appropriate where record was insufficient to affirm, but also was insufficient for district court to find claimant disabled).

Where the district court cannot discern the basis for the Commissioner's decision, a sentence-four remand may be appropriate to allow the Commissioner to explain the basis for his decision. *Falcon v. Heckler*, 732 F.2d 872, 829 - 30 (11th Cir. 1984) (remand was appropriate to allow ALJ to explain his basis for determining that claimant's depression did not significantly affect her ability to work).[16]  In contrast, sentence six of 42 U.S.C. § 405(g) provides:

> The court . . . may at any time order additional evidence to be taken before the Commissioner of Social Security, but only upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding.

42 U.S.C. § 405(g).  To remand under sentence six, the claimant must establish:  1) that there is new, non-cumulative evidence; 2) that the evidence is material —  relevant and probative so that there is a reasonable possibility that it would change the administrative result; and 3) there is good cause for failure to submit the evidence at the administrative level.  *See Jackson*, 99 F.3d at 1090-92; *Cannon v. Bowen*, 858 F.2d 1541, 1546 (11th Cir. 1988); *Smith v. Bowen*, 792 F.2d 1547, 1550 (11th Cir. 1986); *Caulder v. Bowen*, 791 F.2d 872, 877 (11th Cir. 1986); *Keeton v. Dept. of Health & Human Serv.*, 21 F.3d 1064, 1068 (11th Cir. 1994).  A sentence-six remand may be warranted even in the absence of an error by the Commissioner if new, material evidence becomes available to the claimant.  *Jackson*, 99 F.3d at 1095.[17]

## IV.    ANALYSIS OF ALLEGED ERRORS

As set forth above, the treatment notes and Medical Source Statement of Dr. Kashfi are

---

[16] On remand under sentence four, the ALJ should review the case on a complete record, including any new material evidence.  *Diorio v. Heckler*, 721 F.2d 726, 729 (11th Cir. 1983) (on remand ALJ required to consider psychiatric report tendered to Appeals Council); *Reeves v. Heckler*, 734 F.2d 519, 522 n.1 (11th Cir. 1984) (on remand ALJ required to consider the need for orthopedic evaluation).  After a sentence-four remand, the district court enters a final and appealable judgment immediately, and then loses jurisdiction. *Jackson*, 99 F.3d at 1089, 1095.

[17] With a sentence-six remand, the parties must return to the district court after remand to file modified findings of fact.  *Id.*  The district court retains jurisdiction pending remand, and does not enter a final judgment until after the completion of remand proceedings.  *Id.*

largely and materially incomprehensible.  *See* supra. pp 2, 8.  This is significant in two respects.  First, Dr. Kashfi is the only treating and examining physician in this case.  Second, the ALJ discounted or gave little or no weight to Dr. Kashfi's opinion regarding the effect of Yamin's mental impairments on her functional ability to work because Dr. Kashfi's "treatment notes . . . did not support such limitation[s]."  R. 21.

Although this Court could not find an opinion from the Eleventh Circuit directly on point, the Second and Eighth Circuits have specifically held that the illegibility of important evidentiary material can warrant a remand for clarification and supplementation.  *Miller v. Heckler*, 756 F.2d 679 680-81 (8th Cir. 1985); *Brissette v. Heckler*, 730 F.2d 548, 550 (8th Cir.1984); *see also Cutler v. Weinberger*, 516 F.2d 1282, 1285 (2d Cir.1975) (illegible medical reports provide reviewing court with no way to determine whether the Secretary fully understood the medical evidence before him).  In *Bishop v. Sullivan*, 900 F.2d 1259, 1262 (8th Cir. 1990), pertinent medical evidence was submitted to the ALJ prior to the hearing consisting of sixty-five pages, twenty-six of which were illegible because of poor copy quality or handwriting.  *Id*.  The Eighth Circuit held:

> It is the ALJ's duty to develop the record fully and fairly, even in cases in which the claimant is represented by counsel. *Dozier v. Heckler*, 754 F.2d 274, 276 (8th Cir.1985). Based on the record before us, we cannot determine whether Bishop's combined impairments following his back surgery meet or equal a listed impairment or whether he is otherwise disabled. We doubt that the ALJ could properly decipher all the medical reports any better than we could. On remand, the parties should determine which of the existing medical records are relevant and provide the ALJ with legible copies of these records or direct interrogatories to doctors and hospital personnel. If the ALJ requires additional evidence to make a disability determination, he should order consultative examinations to be performed at the expense of the Social Security Administration. *See* 20 C.F.R. § 404.1517(a) (1989).

*Bishop*, 900 F.2d at 1262.  In the Eleventh Circuit, the ALJ has the duty to develop a full and fair record even when the claimant is represented by counsel.  *Graham v. Apfel*, 129 F.3d 1420, 1422 (11th Cir. 1997); *Brown v. Shalala*, 44 F.3d 931, 934 (11th Cir. 1995) (ALJ's duty to develop a full and fair record exists whether or not the applicant is represented).  In *Rease v. Barnhart*, 422 F.Supp.2d 1334, 1372 (N.D. Ga. 2006), the court explained the connection between the claimant's burden and the ALJ's duty as follows:

> Although the burden of proof is on the claimant to prove disability, the ALJ is under a duty to conduct a full and fair inquiry into all the matters at issue. *Ford v. Secretary of Health and Human Services*, 659 F.2d 66 (5th Cir.1981).  Thus, in general, the claimant has the burden of obtaining his medical records and proving that he is disabled. 20 C.F.R. § 404.1512(a) and (c). On the other hand, the Commissioner (ALJ) has the responsibility to make every reasonable effort to develop the claimant's complete medical history, for at least the twelve months preceding the month in which the claimant filed his application and, if applicable, for the twelve month period prior to the month in which he was last insured. 20 C.F.R. § 404.1512(d).
>
> . . .
>
> When the medical evidence is inadequate for the Commissioner to determine whether the claimant is disabled, the Commissioner has the responsibility to re-contact the claimant's treating physician(s) or other medical source(s) and determine whether the additional information the ALJ needs is available. 20 C.F.R. § 404.1512(e). If the additional needed medical evidence is not readily available, then the ALJ should obtain a consultative examination. 20 C.F.R. §§ 404.1517 and 416.917; *Sellers v. Barnhart*, 246 F.Supp.2d 1201 (M.D.Ala.2002); *Holladay v. Bowen*, 848 F.2d 1206, 1210 (11th Cir.1988); *Caulder v. Bowen*, 791 F.2d 872 (11th Cir.1986); *compare Murray v. Heckler*, 737 F.2d 934 (11th Cir.1984).

*Id*. at 1372.

While a claimant's failure to raise the argument to the district court that the ALJ failed to fully develop the record generally results in the waiver of that issue, if a court cannot determine

24

whether substantial evidence supports the ALJ's decision, the case must be remanded. *See Robinson v. Astrue*, 235 Fed.Appx. 725 (11th Cir. 2007) (holding claimant waived argument that ALJ failed to fully develop record when that argument was not raised in the district court); *Johnson v. Barnhart*, 138 Fed.Appx. 266, 271 (11th Cir. 2005) (holding that if the Commissioner lacked sufficient evidence to make a disability determination remand is necessary).

The Court has reviewed the entire record and was unable to comprehend a substantial portion of Dr. Kashfi's treatment notes. It is unclear and doubtful that the ALJ could have comprehended Dr. Kashfi's notes. Thus, it is unclear how the ALJ was able to discount Dr. Kashfi's opinions based upon his treatment notes. The Court finds the opinions of the Second and Eight Circuits persuasive, and concludes that the case must be remanded without even reaching the arguments of the parties because Dr. Kashfi's treatment notes and Medical Source Statement are critical to determining whether substantial evidence existed to support the Commissioner's decision to deny Yamin's claims. On remand the parties should determine whether a legible copy of Dr. Kashfi's Medical Source Statement exists, and obtain typed or otherwise legible copies of Dr. Kashfi's treatment notes. If the Commissioner requires additional medical evidence a consultative examination should be ordered and paid for at the Commissioner's expense. *See* 20 C.F.R. § 404.1517.[18]

---

[18] 20 C.F.R. § 404.1517 states: "If your medical sources cannot or will not give us sufficient medical evidence about your impairment for us to determine whether you are disabled or blind, we may ask you to have one or more physical or mental examinations or tests. We will pay for these examinations. However, we will not pay for any medical examination arranged by you or your representative without our advance approval. If we arrange for the examination or test, we will give you reasonable notice of the date, time, and place the examination or test will be given, and the name of the person or facility who will do it. We will also give the examiner any necessary background information about your condition." *Id.*

## V.   <u>CONCLUSION</u>

For the reasons stated above, it is **ORDERED** that the Commissioner's decision is **REVERSED AND REMANDED pursuant to sentence four of 42 U.S.C. § 405(g)** for further consideration consistent with this opinion.[19] The Clerk is directed to enter a separate judgment in favor of the Yamin and close the case.

**DONE and ORDERED** in Orlando, Florida on March 24, 2009.

_____
GREGORY J. KELLY
UNITED STATES MAGISTRATE JUDGE

The Court Requests that the Clerk
Mail or Deliver Copies of this Order to:

Shea A. Fugate
Law Office of Shea Fugate
1800 Pembrook Dr., Suite 300
P.O. Box 940989
Maitland, Florida    32794

Susan R. Waldron
U.S. Attorney's Office
Suite 3200
400 N. Tampa St.
Tampa, Florida    33602

---

[19] On remand, the Commissioner should consider three additional factors. First, an ALJ must state with particularity the weight given different medical opinions and the reasons therefore, and the failure to do so is reversible error. *Sharfarz v. Bowen*, 825 F.2d 278, 279 (11th Cir. 1987). Second, an ALJ "may not arbitrarily substitute his own hunch or intuition for the diagnoses of a medical professional." *Marbury v. Sullivan*, 957 F.2d 837, 840-41 (11th Cir. 1992 (Johnson, J., concurring) ("An ALJ sitting as a hearing officer abuses his discretion when he substitutes his own uniformed medical evaluations for those of claimant's treating physicians."). Third, the Commissioner should consider Yamin's multiple low GAF scores. *See McCloud v. Barnhart*, 166 Fed.Appx. 410 (11th Cir. 2006); *Barber v. Barnhart*, 459 F.Supp.2d 1168, 1172, 1174 (N.D. Ala. 2006); *Hall v. Commissioner*, Case No. 2:05-cv-559-FtM-29SPC, 2007 WL 4981325 at *12 (M.D. Fla. Feb. 9, 2007) (reversing and remanding because the ALJ failed to consider several low GAF scores).

Mary Ann Sloan, Regional Chief Counsel
Dennis R. Williams, Deputy Regional Chief Counsel
Nadine DeLuca Elder, Assistant Regional Counsel
Office of the General Counsel, Region IV
Social Security Administration
61 Forsyth Street, S.W., Suite 20T45
Atlanta, Georgia        30303-8920

The Honorable Douglas A. Walker
Administrative Law Judge
c/o Social Security Administration
Office of Disability Adjudication and Review
Suite 300
3505 Lake Lynda Dr.
Orlando, FL 32817-9801.